# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cv-503-FDW
# (3:15-cr-125-FDW-1)

| | | |
|---|---|---|
| SAMMIE MARKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). Petitioner is represented by Jefferson Moors and William Terpening.

### I. BACKGROUND

Petitioner Sammie Marks owned Marks Metal & Salvage, a Matthews, North Carolina company dealing in metal and recycling. (Crim. Case No. 3:15-cr-125-FDW-1, Doc. No. 13 at ¶ 5: PSR). From 2009 through 2013, he deposited $1,126,417 in checks and cash receipts from this company and its customers into his personal bank account. (Id. at ¶ 7). He failed to report these deposits as income to the Internal Revenue Service ("IRS"), and he also failed to disclose such income to his tax return preparer. (Id. at ¶ 8). As a result of these failures, Petitioner owed an additional $158,614 in taxes to the IRS. (Id. at ¶ 9).

In May 2015, the Government filed a Bill of Information charging Petitioner with one count of tax evasion in violation of 26 U.S.C. § 7201, based on his 2012 tax return. (Id., Doc. No. 1). Petitioner retained attorney W. Rob Heroy to represent him, and the two had numerous

1

discussions regarding the amount of loss. (Doc. No. 7-1 at ¶¶ 1, 3: Heroy Aff., Gov. Ex. 1). Petitioner provided Heroy with records showing $634,249 in business expenses, but the Government disallowed $74,307 because these expenses related to a different business owned by Petitioner. (Id. at ¶ 3). Because some of these records did not clearly identify which years the expenses related to, the total expense deduction was spread evenly over the five years involved in his offense, for a total of $111,988 in business expenses per year. (Id.). The amount of loss was based on the difference between Petitioner's reported income and his bank deposits, minus his business expenses, multiplied by the criminal tax rate of 28 percent. (Id. at ¶ 4; Doc. No. 7-2: Gov. Ex. 2 (tax loss chart submitted at sentencing as Gov. Ex. 1). This resulted in a total tax loss of $158,614. (Doc. No. 7-2).

Because most of Petitioner's business records had been lost or misplaced, Petitioner and Heroy discussed hiring a forensic accountant and trying to re-create the records. (Doc. No. 7-1 at ¶¶ 3, 5). However, they decided that this would not be a fruitful endeavor, given the lack of records; the fact that more than $200,000 in additional expenses or deductions would be needed to lower the offense level below the 16 levels offered in the Government's plea agreement; the fact that lowering the offense level would result in the loss of a third point for acceptance of responsibility; and the expense of hiring a forensic accountant. (Id. at ¶ 5).

Petitioner waived indictment and agreed to plead guilty to the charge. (Crim. Case No. 3:15-cr-125-FDW-1, Doc. No. 3: Plea Agrmt.). As part of the plea agreement, the parties agreed to recommend to the Court that a base offense level of 16 applied, that Petitioner should receive a three-level reduction for acceptance of responsibility, and that either party could argue for a departure or variance at sentencing. (Id. at ¶ 6). Petitioner also agreed to waive his right to challenge his conviction or sentence on appeal or in any post-conviction proceeding, except as to

claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 17-18). At the plea hearing, Petitioner affirmed that he understood and agreed to the terms of his plea agreement. (Id., Doc. No. 8 at 3: Acceptance and Entry of Guilty Plea). He agreed, as part of the factual basis, that he owed an additional $158,614 in taxes for the years 2009 to 2013. (Id., Doc. No. 2 at ¶ 5; Doc. No. 8 at ¶¶ 30-31).

The probation officer prepared a presentence report, recommending that a base offense level of 16 applied because the amount of tax loss, $158,614, was less than $250,000, but more than $100,000. (Id., Doc. No. 13 at ¶ 17; U.S.S.G. § 2T4.1(F) (2015). After allowing a three-level reduction for acceptance of responsibility, the probation officer calculated Petitioner's total offense level as 13. (Id., Doc. No. 13 at ¶¶ 24-26). The probation officer determined that Petitioner had a criminal history category of I and an advisory guidelines range of 12-18 months of imprisonment. (Id. at ¶¶ 43, 71).

Neither party objected to the PSR, but Petitioner filed a sentencing memorandum arguing that the sentencing factors in 18 U.S.C. § 3553(a) weighed in favor of a sentence below the guidelines. (Id., Doc. No. 18 at 4-6: Sealed Sent. Memo.). Petitioner argued that he "maintained little in the way of records" and that his lack of documentation regarding the losses or expenses sustained by his business hurt him because such records might have shown a substantially lower tax liability. (Id. at 3). He contended that he had little formal education and no business training and had not intended to victimize the Government. (Id. at 5).

This Court adopted the PSR, and on December 1, 2015, the Court sentenced Petitioner to 12 months and one day in prison. (Id., Doc. No. 21: Judgment). Petitioner did not appeal. Instead, he timely filed the present motion to vacate through counsel on June 29, 2016. In his motion, Petitioner contends that his attorney provided ineffective assistance because he did not

3

consult a tax expert "to critique or explain the $158,614 tax-loss." (Doc. No. 1 at 3, 7). He contends that the calculation of the tax loss was "arbitrary." (Id. at 4). In particular, he points to the $111,988 per year that Petitioner was credited with for business expenses. (Id. at 5). Citing an internet website, Petitioner asserts that the amount of loss should have been calculated based on the average net profit for a sole proprietorship engaged in "other services," which he asserts is 12.14%. (Id.). He further contends that his net profit should be reduced by personal exemptions and the standard deduction before determining the amount of additional tax due. (Id. at 5-6). Based on these calculations, Petitioner contends that his offense level should have been six and that he did not defraud the Government, but that, instead, he may have been eligible for refund credits. (Id. at 7-8). Petitioner seeks to vacate his sentence, asserting that the outcome of the case would have been significantly different had counsel hired a tax expert. (Id. at 8).

On October 3, 2016, the Court ordered the Government to respond, and the Government filed its response on January 6, 2017. (Doc. Nos. 5, 7).

**II.   STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

**III.   DISCUSSION**

The Government contends that Petitioner's ineffective assistance claim should be denied because he cannot show deficient performance or prejudice where his assertions regarding the loss amount are unfounded. For the following reasons, the Court agrees.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000). To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999). If a petitioner fails to conclusively demonstrate prejudice, the reviewing court need not consider whether counsel's performance was deficient. United States v. Terry, 366 F.3d 312, 315 (4th Cir. 2004).

The Court first notes that, although Petitioner suggests that perhaps the charges against him should have been dismissed, he does not contest his guilty plea or conviction; rather, he attacks only his sentence based on an allegation of ineffective assistance of counsel. See (Doc. No. 1 at 8). Because Petitioner does not argue that his guilty plea was involuntary, he has waived any claim of ineffective assistance that preceded his plea. See United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (holding that arguments alleging pre-plea Sixth Amendment violations were "not cognizable" because the defendant's guilty plea had waived them); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1296 (4th Cir. 1992) (holding that a guilty plea waived a claim of the denial of constitutionally required counsel "that occurred prior to" the guilty plea and was "unrelated to it"). Moreover, any attack on Petitioner's guilty plea would fail because it would contradict his sworn testimony during the plea hearing and because he cannot show that it would have been objectively reasonable for him to proceed to trial. See United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (holding § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances); United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (recognizing defendant's decision to proceed to trial must be objectively reasonable).

The Court next finds that Petitioner has not shown deficient performance by counsel or prejudice. Under the United States Sentencing Guidelines, "the tax loss is the total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c). Where gross income is underreported "the tax loss shall be treated as equal to 28% of the unreported gross income . . . unless a more accurate determination of the tax loss can be made." Id., Note A. Here, the parties agreed to the tax loss calculation, which was based on the difference between Petitioner's reported income and his unreported income from the bank deposits. See (Doc. No. 7-2, Gov. Ex.

2). The Government allowed Petitioner to deduct $559,942 in business expenses, which was spread evenly over the five-year period of his conduct. Id.; (Doc. No. 7-1 at ¶ 3). His corrected unreported income was then multiplied by the criminal tax rate of 28% to calculate the amount of tax loss, which was determined to be $158,614. (Doc. No. 7-2; see also U.S.S.G. § 2T1.1(c), Note A).

Petitioner has made no showing that a tax expert would have used a different and more favorable procedure in calculating the amount of loss, nor has he shown that a tax expert would have followed the tax loss calculations that he uses. He also has not established that there is a reasonable probability that the Government would have accepted his loss calculation as part of Petitioner's plea agreement, or that this Court would have accepted this calculation in sentencing him. Instead, Petitioner bases his argument on the purported average net profit for sole proprietorships from a public website. See (Doc. No. 1 at 5-6). He contends that the website's statistics relating to "other services" applies. However, the website identifies these "other services" as automotive repair and maintenance, miscellaneous repairs, and personal laundry services. See www.bizstats.com/sole-proprietorship-business-financials/other-services-139/. There is no evidence that these statistics are accurate, that they would apply to Petitioner's business, or that they would apply to all of the years at issue. Petitioner also makes no showing that his business was operating at an industry-average level. Thus, he has not shown that this tax loss calculation based on estimated benchmarks from a different industry is relevant to his tax loss calculation, much less that it is "a more accurate determination of the tax loss" as required by the Guidelines. See U.S.S.G. § 2T1.1(c), Note A.

Additionally, Petitioner's contention that the tax loss is overstated because he did not receive credit for his personal exemptions or the standard deduction is misplaced because, to the

extent that he claimed these items on his original tax returns, they impacted his original income and tax due. The calculation of the taxes due and owing as a result of his failure to report additional income is a separate issue. Taking the personal exemptions and deductions into account with respect to his unreported income would result in counting these deductions twice— a windfall to which Petitioner is not entitled. Although Petitioner failed to file a return in 2010, he is not entitled now to claim any exemptions or reductions that he did not claim due to his failure to file a return. See United States v. Delfino, 510 F.3d 468, 472-73 (4th Cir. 2007) (holding that defendants were not entitled to subtract from the amount of loss deductions that they could have taken but did not claim due to their failure to file tax returns).

Finally, Petitioner's reliance in his memorandum on Baxter v. United States, 634 F. Supp. 2d 897 (N.D. Ill. 2009), a non-binding district court decision, is misplaced. In Baxter, the defendant was a Certified Public Accountant who had prepared tax returns for a married couple. The couple was using a system of trusts that the defendant believed to be lawful at the time, but was later shown to be an illegal tax evasion scheme. Id. at 899. Because the parties disputed the amount of tax loss, with the Government arguing that it involved over $5 million, the district court held an evidentiary hearing on this issue. Id. at 900. Subsequently, the district court found that the Government had failed to prove that the defendant had sought to defraud the government through the use of the trust system. Id. The court sentenced the defendant based on what it believed was the amount of loss resulting from the defendant's obstruction of an audit, but which turned out to be part of the tax loss that the court had found the Government had not proved at the evidentiary hearing. Id. at 900, 904. The district court granted the defendant's § 2255 motion and vacated her sentence, holding that "[d]efense counsel in criminal tax cases need not always retain a tax expert to assist," but stating that the tax-loss question in that case "was

8

sufficiently complicated so as to require expert assistance." Id. at 908. Baxter, a non-binding decision, does not support hiring a tax expert for Petitioner. The issue here did not involve a complicated trust system, but simply Petitioner's failure to report income from his business.

In sum, because counsel was not deficient for failing to obtain a tax expert, and because Petitioner's tax loss calculation was made in accordance with the Guidelines, he cannot show that counsel's representation fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-88. Additionally, he has not shown that, but for counsel's failure to retain a tax expert, there is a reasonable probability he would have received a lower sentence. See Royal, 188 F.3d at 249. Accordingly, Petitioner has not shown deficient performance or prejudice, and his claim of ineffective assistance is denied. See Strickland, 466 U.S. at 687-88, 694.

The Court further finds that Petitioner's motion to vacate is also denied because he has not identified any relief that this Court can provide even if his claim had merit. As relief, Petitioner seeks to be resentenced, but he has finished serving his term of imprisonment. That is, the Bureau of Prisons website shows that Petitioner was released from prison on December 9, 2016.[1] Although he still has to serve a one-year term of supervised release, this is the lowest term of supervised release that he can receive under the applicable guidelines range. See 26 U.S.C. § 7201 (tax evasion is punishable by five years in prison); U.S.S.G. § 5D1.2(a)(2) (at least one year of supervised release should be imposed for a Class D felony). Finally, because § 2255 authorizes challenges "claiming the right to be released" from custody, but "[a] reduction in restitution is not a release from custody," Petitioner may not challenge the amount of restitution that he owes in a § 2255 proceeding. See Blaik v. United States, 161 F.3d 1341, 1342

---

[1] Because he was in custody when he filed his motion to vacate, this Court maintains jurisdiction over the case. See Maleng v. Cook, 490 U.S. 488, 490-91 (1989).

(11th Cir. 1998) (collecting cases); United States v. Coward, 230 F.3d 1354 (4th Cir. 2000) (unpublished table decision) (holding "it is well-settled that § 2255 relief may not be granted when the defendant challenges only a fine or restitution order"). Because restitution is a financial penalty, not a physical constraint on liberty, challenges to restitution are not cognizable in a § 2255 proceeding. See United States v. Hudgins, 201 F. App'x 142, 143 (4th Cir. 2006); Carpenter v. United States, No. 3:15cv161-GCM, 2015 WL 5254185, at *4 (W.D.N.C. Sept. 9, 2015) (unpublished) (holding claim of ineffective assistance with respect to the amount of restitution was not cognizable under § 2255); but cf. United States v. Luessenhop, 143 F. App'x 528, 531 (4th Cir. 2005) (allowing, without discussion of propriety of proceeding under § 2255, an ineffective assistance of counsel claim where defendant made showing that the amount of loss and amount of restitution would have been substantially less). Accordingly, Petitioner's motion to vacate is denied because there is no basis for resentencing him.

In sum, Petitioner's motion to vacate is denied and dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: February 13, 2017

Frank D. Whitney
Chief United States District Judge